Kurpgeweit v. State.

---

LEOPOLD KURPGEWEIT V. STATE OF NEBRASKA.

FILED FEBRUARY 12, 1915. No. 18,829.

1. **Larceny:** INFERENCE OF GUILT: UNEXPLAINED POSSESSION. In a prosecution for cattle-stealing, the jury may infer guilt from defendant's unexplained possession of the recently stolen animals.

2. **Criminal Law:** WITHDRAWAL OF REST: DISCRETION. In a prosecution for larceny, it is within the discretion of the trial court to permit the state to withdraw its rest and prove the ownership of the property as charged in the information.

3. ———: INSTRUCTIONS: CONSTRUCTION. In a criminal prosecution, an instruction that defendant is entitled to the presumption of innocence as a matter of evidence, and another instruction that the evidence is what is said by the witnesses on the stand, should be construed together, and, when thus considered, they are not inconsistent or erroneous.

4. ———: APPEAL: AFFIRMANCE. In the appellate court, a judgment will not be reversed unless error in the proceedings below is affirmatively shown by the record.

5. ———: ———: REFUSAL OF INSTRUCTION. The refusal to give a requested instruction is not erroneous, where its substance is properly given in a different form.

ERROR to the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Willis E. Reed,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

ROSE, J.

In a prosecution by the state in the district court for Madison county, Leopold Kurpgeweit was convicted of cattle-stealing, and for that felony was sentenced to the penitentiary for a term of not more than ten years nor less than one year. As plaintiff in error, he now presents for review the record of his conviction.

The first objection to the judgment is that the verdict is not sustained by the evidence. Defendant was accused of stealing seven cows and five heifers, the property of Herman Kurpgeweit, of the value of $500. There is proof tending to show: Defendant and the owner of the cattle are brothers. Both are farmers, defendant living west of his brother. There is a quarter section of land between their possessions. Their houses and barns are north of a public highway running east and west. The stolen animals are described as red. They were horned cattle and were unbranded. During the evening of October 1, 1913, the cattle mentioned and a black cow were inclosed for the night in the corral of the owner on his premises. The next morning they were missing. The fence wires at the northeast corner of the owner's pasture had been cut. On the west side the conditions indicated that the posts had been pulled out, that the fence had been thrown on the ground, and that it had been put back in its place. Defendant made no inquiry or search, though he was promptly notified of the loss. He offered to loan a saddle to be used by the owner of the stock in making a search which might

take him away from defendant's premises. The owner, public officers and others made searches extending into several counties. The black cow returned alone, unharmed, October 5, 1913. The other missing animals were found in defendant's pasture October 10, 1913, and were there identified in presence of the sheriff. They had been recently dehorned and bore the fresh marks of the mutilation. Some of the tails had been cut. On one cow there had been an attempt to destroy an identifying mark. In the left ears of the animals the letter "L" had been rudely cut. They were grazing with some of defendant's red cattle, and the latter bore similar marks of fresh branding and of dehorning. Defendant claimed to be the owner of the stolen cattle after they were found in his pasture. He afterward gave as a reason for taking them that they were mortgaged, and that the mortgagee would be the loser instead of his brother. In this summary there is no attempt to make findings or to recite facts or to mention any evidence on behalf of defendant. The purpose is to outline some of the proofs in support of the charge against accused, for the purpose of testing the sufficiency of the evidence to sustain the conviction. There is no direct testimony showing when or how the cattle got into defendant's pasture. Defendant adduced proof tending to show that, owing to the conditions of the weather and the pasture, live stock had a propensity to break out of inclosures, and that teamsters drove through gates across defendant's farm, but the jury did not draw from testimony of this character the inference that the missing cattle strayed or broke into defendant's pasture. Defendant and his wife and their son testified as witnesses, but there was no attempt on the part of any one to explain why cattle belonging to defendant and similarly colored cattle owned by his brother bore alike the fresh marks of branding and dehorning when found. The return of the black cow, which could not be disguised, is a suspicious circumstance. There is nothing in the record to make the testimony on behalf of the state unbelievable. The evidence will sustain a finding that a proper explanation of defendant's possession of the recently stolen

.cattle in the mutilated condition described was not given. In a recent case the law was stated thus: "The unexplained ·possession of stolen property, shortly after the theft of it is a fact which may justify the jury in inferring that the person so in possession is the thief." *Palmer v. State,* 70 Neb. 136. To the same effect: *Williams v. State,* 60 Neb. 526; *Dobson v. State,* 46 Neb. 250; *Robb v. State,* 35 Neb. 285; *Thompson v. State,* 6 Neb. 102. The conclusion is that the verdict is sustained by the evidence.

An order permitting the state to withdraw its rest and to prove .the ownership of the cattle is challenged as erroneous. The information was notice that evidence of this nature was essential to a conviction. Defendant could not have been surprised by its introduction. The ruling was within the discretion of the district court. *Blair v. State,* 72 Neb. 501; *Hans v. State,* 50 Neb. 150; *Clough v. State,* 7 Neb. 320.

Many rulings in the exclusion of testimony on behalf of defendant are pointed out as erroneous, but they are not properly presented for review. There is a failure to comply with the rules relating to assignments of error in briefs. Principles of law asserted to be violated in rejecting testimony are not stated. The materiality of the rejected evidence to the plea of not guilty or to the disproval of any part of the state's case is not in many instances shown. In answer to questions in proper form, witnesses were permitted to testify to matters excluded without error earlier in the trial. There are few offers of proof indicating the purpose of the rejected testimony. In determining whether plaintiff had a fair trial, however, all of the rulings challenged have been examined without finding an error prejudicial to defendant.

The following instruction is criticised as erroneous: "The evidence is not what counsel on either side said to you in their opening statements, nor what they have said to you in the course of argument, nor what they may have said to the court in your presence. The evidence in this case is what the witnesses have been permitted to say to you while upon the witness-stand. And any statement made by any

witness upon the stand which was ordered stricken by the court is not evidence in this case, and is not to be considered by you in determining your verdict."

The criticisms are: The jury were prevented from considering the presumption of innocence. Neither party requested the instruction. It prevented defendant from having the benefit of counsel. The language used is argumentative. The criticisms are all without merit. The law was correctly stated. The first criticism is answered by the following instruction:

"The law presumes this defendant to be innocent, and this presumption carries with it all that a presumption of innocence implies, and is matter of evidence to the benefit of which the defendant is entitled until his guilt is proved by the evidence to your satisfaction beyond a reasonable doubt, and follows and remains with him throughout until removed by the evidence beyond a reasonable doubt, and must be recognized by you in your deliberation."

The two instructions, when considered with the entire charge, as they should be, are not inconsistent, but give defendant the benefit of the presumption of innocence as evidence. The trial court may give a proper instruction applicable to the evidence, though neither party requested it. The jury were not directed to disregard the arguments of counsel, unless they misstated the evidence. What was said in argument by counsel does not appear in the record. It follows that in this respect error in the instruction is not affirmatively shown. It is equally clear that the direction of the trial court is not objectionable as being argumentative.

Another instruction is also assailed by defendant, but it is applicable to the evidence and has often been approved.

The refusal to give a requested instruction is the subject of another assignment, but its substance was properly given in a different form. There is no error in the record, and the judgment is

AFFIRMED.

MORRISSEY, C. J., not sitting.